**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

ELIZABETH MARTÍNEZ VALENTÍN,

Plaintiff,

v.

FRANK J. BISIGNANO
Commissioner of Social Security,

Defendant.

CIVIL NO.  25-1184 (HRV)

**OPINION AND ORDER[1]**

Elizabeth Martínez-Valentín (hereinafter "Plaintiff" or "Ms. Martínez") seeks review of the final administrative decision of the Commissioner of Social Security ("the Commissioner") denying her claim for disability benefits under the Social Security Act ("the Act"). The Commissioner filed his brief arguing that the decision should be affirmed because it is based on substantial evidence. The parties have consented to the entry of judgment by a United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c).

After careful consideration of the record, and for the reasons outlined below, the Commissioner's decision is **AFFIRMED**.

---

[1] Marielena Negrón-Rivera, a third-year law student at the University of Puerto Rico School of Law, provided significant assistance in the research and drafting of this Opinion and Order.

1

## I.    LEGAL FRAMEWORK

### A.    Standard of Review

Pursuant to 42 U.S.C. § 405(g), any individual may obtain review of a final decision of the Commissioner in which he or she was a party. Under said provision, the Court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner [. . .]" *Id*. In addition, the statute provides that if supported by substantial evidence, the findings of the Commissioner as to any fact, shall be conclusive. *Id*.

A reviewing Court must uphold the decision of the Commissioner if the Administrative Law Judge ("ALJ") applied the correct legal principles, and the determination is supported by substantial evidence. *Seavey v. Barnhart*, 276 F.3d 1, 9 (1st Cir. 2001). The scope of my review is thus limited. I am tasked with determining whether the ALJ employed the proper legal standards and focused facts upon the proper quantum of evidence. *See Ward v. Comm'r of Soc. Sec.*, 211 F.3d 652, 655 (1st Cir. 2000); *see also Manso-Pizarro v. Sec'y of Health and Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).

To meet the evidentiary benchmark, more than a scintilla of evidence is required. *Purdy v. Berryhill*, 887 F.3d 7, 13 (1st Cir. 2018). But the threshold for evidentiary sufficiency is not particularly high; if after looking at the existing administrative record, the reviewing court is persuaded that it contains sufficient evidence to support the Commissioner's factual determinations, the decision is bound to be upheld. *See Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019) (cleaned up). Substantial evidence exists when "a reasonable mind, reviewing the evidence in the record, could accept it as adequate to

support [the] conclusion." *Irlanda-Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991). The ALJ's decision must be reversed, however, if it was arrived at "by ignoring evidence, misapplying law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

**B.      The Five-Step Sequential Evaluation Process**

To be eligible for social security benefits, a claimant must demonstrate that he or she is "disabled" within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 146, (1987). The Act defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(a) and 1382c(a)(3)(A). "Substantial gainful activity" means work that is considered both substantial and gainful. *Peters v. Colvin*, 133 F. Supp. 3d 273, 278-79 (D. Mass. 2015). Substantial work is defined as work that involves significant physical or mental activity. *Id.*  On the other hand, gainful work is "any work done for profit, whether or not profit is realized". *Id*. The impairment or impairments must be severe enough that a claimant "is not only unable to do his [or her] previous work but cannot . . . engage in any other kind of substantial gainful work which exists [in significant numbers] in the national economy...." 42 U.S.C. § 423(d)(2), § 1382c(a)(3)(B); *see also* 20 C.F.R. § 404.1520(a)(1).

The Commissioner follows a five-step evaluation process to determine disability. *See Mills v. Apfel*, 244 F.3d 1, 2 (1st Cir. 2001); 20 C.F.R. § 404.1520(a). These steps must be followed in order, and if a person is determined not to be disabled at any step, the inquiry stops. *Id*. The Plaintiff has the burden of proof at the first four steps of the process.

*Freeman v. Barnhart*, 274 F.3d 606, 608 (1st Cir. 2001); *Bowen v. Yuckert* 482 U.S. at 146.

Step one considers work activity, that is, whether the Plaintiff is currently "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If the person is, then she is not disabled under the Act. *Id.* Step two asks whether Plaintiff has a physical or mental impairment, or a combination of impairments, that is severe and meets the Act's duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii). Step three considers the medical severity of the Plaintiff's impairments. 20 C.F.R. § 404.1520(a)(4)(iii). At this step, if Plaintiff is determined to have an impairment that meets or equals an impairment listed in 20 C.F.R. pt. 404, Subpt. P., app. 1, and meets the duration requirements, she is disabled. 20 C.F.R. § 404.1520(a)(4)(iii). On the other hand, if the Plaintiff is not found to be disabled at this step, her Residual Functional Capacity ("RFC") is assessed. 20 C.F.R. § 404.1520(a)(4), (e).

Once the ALJ determines the RFC, the inquiry proceeds to step four. Step four compares Plaintiff's RFC to the one required in their past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the Plaintiff can still do their past relevant work, he or she is not disabled. *Id.* Finally, at step five, the Plaintiff's RFC is considered alongside her "age, education, and work experience to see if [she] can make an adjustment to other work." 20 C.F.R. § 404.1520(a)(4)(v). If he or she can make an adjustment to other work, they are not disabled; if they cannot, they are disabled. *Id.* At this step, it is the Commissioner who has the burden "to come forward with evidence of specific jobs in the national economy that the applicant can still perform." *Freeman*, 274 F.3d at 608 (citing *Arocho v. Sec'y of Health & Human. Servs.*, 670 F.2d 374, 375 (1st Cir. 1982)).

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff applied for disability and disability insurance benefits on April 25, 2022, alleging her disability began on March 13, 2020. *See* Transcript of Social Security Proceedings ("Tr"), Dkt No. 8, at 22. The claim was initially denied on September 6, 2022, and upon reconsideration on December 7, 2022. *Id.* On January 17, 2023, Plaintiff moved for a hearing, and on August 21, 2023, a video hearing was held presided by ALJ Livia Morales. Ms. Martínez was represented by attorney Arlene Marie Diez-Ramírez. (*Id.*). Impartial vocational expert Tania Schullo also testified at the hearing. (*Id.*). All evidence was submitted by Ms. Martínez at least five (5) days prior to the hearing, and it was admitted into evidence as part of the record. (*Id.*). I briefly summarize below the ALJ's written decision dated November 28, 2023.

The ALJ determined at **Step One** of the five-step sequential process that Ms. Martínez did not engage in substantial gainful activity since the alleged onset date, that is, March 13, 2020. (Tr. 24). At **Step Two**, the ALJ found that Plaintiff had the following severe impairments: arthritis, lumbosacral spine disorder, inflammatory polyanthropy, rheumatoid arthritis, major depressive disorder, and anxiety disorder. (*Id.*).

With respect to **Step Three**, the ALJ concluded that Ms. Martínez did not have an impairment or combination of impairments that met or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 26). For this particular finding, the ALJ found that the record did not establish medical signs, symptoms, laboratory findings, or degree of functional limitation required to meet or equal the criteria. (*Id.*). She considered Plaintiff's alleged impairments under Listings 1.15, 1.16, 1.18, 14.09,  but found that the medical evidence did not show the presence of

an impairment-related physical limitation of musculoskeletal functioning that has lasted or is expected to last at least twelve (12) months, nor medical documentation showing the need of a walker, bilateral canes or crutches, or a wheeled and seated mobility device; an inability to use one upper extremity or both upper extremities to independently initiate, sustain, and complete work-related activities involving fine and gross movements. (Tr. 26-28).

With respect to Ms. Martínez's mental impairments, the ALJ determined that she did not meet or medically equaled the criteria in listings 12.02 and 12.06. In reaching this conclusion, the ALJ considered whether the Paragraph B criteria was satisfied. To satisfy "Paragraph B" criteria, the mental impairment must result in one extreme limitation[2] or two marked limitations[3] in a broad area of functioning. (*Id*.). The ALJ assessed mild and moderate limitations in all relevant areas. For example, as to understanding, remembering, or applying information, Plaintiff has a moderate limitation. (Tr. 28). With respect to the area of interacting with others, Ms. Martínez was found to have a mild limitation. (*Id*.). Regarding concentration deficits, the ALJ found no more than a moderate limitation. (Tr. 29.) And in the area of adapting and managing oneself, the ALJ determined that Ms. Martinez had a mild limitation. (*Id*.). Because Plaintiff's mental impairments did not cause at least two marked limitations or one

---

[2]    An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. 20 C.F.R. pt. 404, subpt. P. app 1.

[3]    A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis. *Id*.

extreme limitation, Paragraph B criteria were not satisfied. (*Id.*). The ALJ likewise considered if Paragraph C criteria was satisfied, but the evidence on record fell short of establishing said criteria. (*Id.*).

Next, and prior to moving to Step Four of the sequential process, the ALJ concluded that Plaintiff had an RFC

> to perform light work as defined in 20 CFR 404.1567(b) except she can: stand/walk four hours in an 8-hour day and frequently finger and handle with both upper extremities. She can climb ramps and stairs occasionally, climb ladders, ropes, or scaffolds never, balance frequently, stoop occasionally, crouch occasionally and crawl occasionally. She can perform simple and routine tasks.

(Tr. 29). The ALJ mentioned that in determining the RFC, she considered Plaintiff's testimony regarding her symptoms and credited them to the extent they were consistent with the objective medical evidence as well as medical opinions and prior administrative medical findings as required by 20 C.F.R. 404.1529, 20 C.F.R. 404.1520c, and Social Security Ruling ("SSR") 16-3p. (Tr. 29-37). In analyzing how a claimant's symptoms impact the RFC, a two-step process is prescribed by the regulations. First, the ALJ is required to determine if the physical or mental impairments could reasonably be expected to produce the pain and/or symptoms alleged. Second, the intensity, persistence, and limiting effects of said symptoms must be evaluated to determine the extent to which they limit Plaintiff's work-related activities. The ALJ concluded after thoroughly explaining her reasoning and weighing the relevant evidence on record that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms but that her statements concerning the intensity, persistence, and limiting effects of said symptoms were not entirely consistent with the medical evidence

and other evidence in the record. A more limiting RFC was thus not warranted according to the ALJ.

Moving on to the last two steps of the framework, the ALJ found Ms. Martínez was unable to perform any past relevant work (**Step Four**), but that considering her age, education, work experience, and RFC, there were jobs existing in significant numbers in the national economy that she could perform (**Step Five**), such as Mail Clerk, Office Helper, and Sorter. (Tr. 37-39). Accordingly, the ALJ held that Ms. Martínez was not disabled under the Act. (Tr. 39).

On January 12, 2024, Plaintiff sought review of the ALJ's decision before the Appeals Council. On January 29, 2024, the Appeals Council denied her request for review. On that date, the ALJ's decision became the Commissioner's final decision. (Tr. 1-8.)

On March 28, 2025, Ms. Martínez filed her social security complaint in this Court. (Dkt Nos. 1 and 2). On March 31, 2025, this case was formally referred to the undersigned magistrate judge for all further proceedings, including the entry of judgment. (Dkt No. 6). On May 27, 2025, the social security transcript was filed. (Dkt No. 8). Plaintiff's social security brief was filed on August 30, 2025 (Dkt No. 15), and the Commissioner's on September 8, 2025. (Dkt No. 17).

### III.    DISCUSSION

Ms. Martínez argues that the ALJ erred in the determination of her RFC. She specifically takes issue with the ALJ's application of legal standards in arriving at her decision and claims that it is not supported by substantial evidence or analysis. Plaintiff first contends that the ALJ erred in her evaluation of treating specialist opinions,

particularly Dr. Carlos Pantojas. (**Issue 1**). She also posits that the RFC determination was impacted by the ALJ's erroneous omission of mental limitations in the RFC. (**Issue 2**). Additionally, Plaintiff contends that the ALJ erred by basing her decision on a defective vocational hypothetical. (**Issue 3**). Lastly, Plaintiff submits that the ALJ erred at Step Two by not including her fibromyalgia condition as a severe impairment. (**Issue 4**).

The Commissioner responds that substantial evidence supports the RFC assessment. According to the Commissioner, there were no treating source opinions for the ALJ to evaluate and, therefore, Ms. Martínez is faulting the ALJ for "failing to evaluate evidence that does not exist." (Dkt. No. 17 at p.4). Furthermore, the Commissioner asserts that the ALJ properly addressed mental limitations in determining Plaintiff's RFC and that her fibromyalgia condition was not a medically determinable impairment based on the evidence on record. The Commissioner emphasizes that Plaintiff's arguments are a request to reweigh the evidence, something that a reviewing court is not supposed to do.

**A.    Issue 1: Evaluation of Dr. Pantojas' Medical Opinion**

As noted, Plaintiff argues that the ALJ committed reversible error by failing to properly evaluate the medical opinion of rheumatologist, Dr. Carlos Pantojas. According to Plaintiff, the ALJ discarded said opinion without applying the proper supportability and consistency analysis. Ms. Martínez specifically challenges the decision of the ALJ to discard Dr. Pantojas' "medical opinion" on grounds that the specific findings were not fully legible except for the following terms: Heberden's nodes, painful range of motion of the joints, lumbar tenderness, knee crepitus, and right positive straight leg raising test.

According to Plaintiff, there was "plenty legible" in the records to support Dr. Pantojas' opinions and findings. Ms. Martínez also objects to the conclusion that Dr. Mercado Santiago and Dr. Carlos Pantojas failed to support allegations of disabling pain and that there were significant temporal gaps between treatment received. (Dkt. No.15, at p.16). Plaintiff further claims that the ALJ erred in not weighing the findings of Heberden's nodes, diminished grip and pinch strength, and chronically elevated inflammatory markers, against contrary evidence and to clearly explain why said findings lacked merit. (Dkt. No.15 at p.17).

The Commissioner ripostes that Dr. Pantojas did not provide a "medical opinion." Accordingly, there can be no error in analyzing the persuasiveness of a non-existent medical opinion. Even assuming for the sake of argument that Dr. Pantojas would have recommended more disabling restrictions if he had been called upon to provide an opinion, the Commissioner maintains that the ALJ would have been completely justified in finding such opinion unpersuasive. I agree.

When considering medical opinions, an ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Rather, to determine the persuasiveness of a medical opinion, an ALJ considers five factors: supportability, consistency with other medical sources, relationship with the claimant, specialization, and "[o]ther factors." *Id.* § 404.1520c(c). The most important of these factors are supportability and consistency and the ALJ is only required to articulate how she considered these two factors in her decision. *Id.* § 404.1520c(b)(2); *see also Albro v. O'Malley,* 740 F. Supp. 3d 26, 37 (D. Mass. 2024);

10

*Cross v. O'Malley*, 89 F.4th 1211, 1215 (9th Cir. 2024) ("The 2017 regulations require an ALJ to discuss the supportability and consistency of medical evidence—the factors the agency has historically found to be the most important in evaluating medical opinion . . . ."). It has been clarified that "the ALJ must still 'articulate how [he or she] considered the medical opinions' and 'how persuasive [he or she] find[s] all of the medical opinions'") (alterations in original) (quoting 20 C.F.R. § 416.920c(a), (b)(1))." *Russ v. Comm'r of Soc. Sec.*, 582 F. Supp. 3d 151, 161 (S.D.N.Y. 2022).

A medical opinion will be considered supportable when the objective evidence and supportive explanations are relevant to support the professional's opinion. 20 C.F.R. § 404.1520c(1). "The more relevant objective medical evidence and **supporting evidence** presented by a medical source to support his or her medical opinion(s) . . . the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(1) (emphasis added). On the other hand, a medical opinion will be considered consistent when other medical sources and evidence support said opinion, making it more persuasive. *See* 20 C.F.R. § 404.1520c(2); *see also Delgadillo v. Comm'r of SSA*, 641 F. Supp. 3d 663, 669 (D. Ariz. 2022).

A review of the analysis carried out by the ALJ concerning the findings of Dr. Pantojas demonstrates that it meets supportability and consistency standards. The ALJ thoroughly discussed and compared Dr. Pantojas' findings to other medical opinions and evidence in the record. The ALJ specifically wrote:

> I **took into consideration** the findings of Dr. Pantojas. Dr. Pantojas diagnosed the claimant with inflammatory polyarthropathy (M06.4), erosive arthritis (M15.4), and fibromyalgia (M79.7) (Ex. 23F at 1). In his treatment notes, the rheumatologist reported abnormal musculoskeletal,

11

joints, and spine examinations. However, the specific findings are not fully legible, except for Heberden's nodes, painful range of motion of the joints, lumbar tenderness, knee crepitus, and right positive straight leg raising test (Ex. 1F at 32 and 40, 7F at 12, and 23F at 4 and 21). The positive straight leg raising test, as documented by Dr. Pantojas, confirms my conclusion that the claimant can stand/walk 4 hours in an 8-hour workday. Once again, the Heberden's nodes support manipulative limitations indicated previously.

\*\*\*

Meanwhile, more recently, Dr. Pantojas prescribed, for the claimant's pain symptoms, Cymbalta 60 mg, Folic Acid 1 mg, Neurontin 800 mg, Methotrexate Sodium 2.5 mg (5 tabs once a week), and Diclofenac Sodium 75 mg (Ex. 23F at 1-2). Based on the above, it is reasonable to find that the treatment received had been essentially conservative with only few changes in medications and dosages.

\*\*\*

The claimant's treatment history with Dr. Mercado Santiago and Dr. Pantojas fails to support her allegations of disabling pain. For instance, there is evidence of significant gaps in treatment with the primary care physician. From July 24, 2020 to April 30, 2021, there are nine months without treatment (Ex. 12F at 3-7). Another gap is from September 23, 2021 to March 2, 2022 (5 months without treatment) (Ex. 12F at 13-17). In terms of Dr. Pantojas's treatment, there is a significant gap from July 17, 2020 to August 13, 2021 (one year without treatment) (Ex. 1F at 13 and 22).

(Tr. 32-33) (emphasis added).

The foregoing shows that the ALJ fully articulated why she would have found unpersuasive any opinion attributable to Dr. Pantojas for a more limiting RFC. In other words, any such opinion would have been unsupported and inconsistent with other medical sources. In sum, it is incorrect to state that the ALJ did not comply with 20 C.F.R. § 404.1527(c) or §404.1520c standards of supportability and consistency when analyzing

12

Dr. Pantojas's medical opinions. At bottom, Plaintiff simply disagrees with the weight she believes the findings of Dr. Pantojas should have received. There was no error.

## B.      Issue 2: Omission of Mental Limitations

Plaintiff argues that the ALJ erred because she did not correctly analyze her mental limitations. (Dkt. No.15 at p.18). She emphasizes that even when one impairment by itself may not be considered to significantly limit an individual, the ALJ is required to analyze all the impairments in reaching her decision and different non-severe impairments may impose critical limitations when considered all together. (*Id*.). Plaintiff specifically claims that the ALJ "failed to include any restrictions for deficits in concentration, persistence, or pace, despite consultative expert Dr. Sarazu's findings of impaired judgment and poor concentration." (Dkt. No.15 at p.19). Plaintiff cites Social Security Ruling 96-8p ("SSR 96-8p") in support of her position.

The Commissioner opposes contending that the argument fails because it misrepresents the ALJ's decision. The ALJ did discuss the issue of concentration deficits and acknowledged the findings of Dr. Sarazu and Dr. Beauchamp but found that they conflicted with other evidence in the record establishing that assessing no more than a moderate limitation in the area of concentration, persistence, and pace was warranted. The RFC reflects such limitation by restricting Plaintiff to simple and routine tasks.

Plaintiff is correct that ALJs must consider the combined effects of severe and non-severe impairments. Social Security Ruling 96-8p provides that

> In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe." While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when

13

> considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim."

SSR 96-8p, 1996 SSR LEXIS 5, 1996 WL 374184, at *5 (July 2, 1996). Additionally, Social Security Administration regulations and case law require the ALJ to consider the combined effect of all the claimant's impairments at each step of the sequential evaluation process. *See McDonald v. Sec'y of Health Hum. Servs.*, 795 F.2d 1118, 1124-25 (1st Cir. 1986); 20 C.F.R. § 404.1520(g). The RFC assessment must "contain a thorough discussion and analysis of the objective medical and other evidence . . . ." SSR 96-8p, 1996 SSR LEXIS 5, *19, 1996 WL 374184, at *7 (July 2, 1996).

I find that the ALJ properly considered evidence regarding the mental limitations claimed by Ms. Martínez and her assessment of a moderate limitations in concentrating, persisting, and maintaining pace is defensible and supported by substantial evidence. In her analysis, the ALJ found discrepancies in the medical evidence, which were thoroughly outlined in her decision. For instance, the ALJ noted that Dr. Beauchamp's notes and analysis of Plaintiff's mental impairments, as well as Dr. Valentin Flores and Dr. Sarazu's, were taken into consideration. (Tr. 34-35). The ALJ also discussed the attention deficit claims, as well as the depressive and anxiety disorders claims. *Id.* Specifically, the ALJ concluded Plaintiff can only perform simple and routine tasks because of her "diminished memory and concentration deficits." (Tr. 36). Nothing more was required and Plaintiff has not met her burden to show reversible error.

## C.    Issue 3: Defective Vocational Hypothetical

Plaintiff also claims that the hypothetical question posed to the vocational expert "omitted key manipulative and environmental restrictions supported by the medical

evidence, as well as any allowance for off-task time." (Dkt. No.15 at p.20). Therefore, she says that the ALJ's Step Five determination is not supported. (*Id.*). The Commissioner notes that this argument is derivative of the challenge Plaintiff made to the RFC assessment. The Commissioner insists in his position that the RFC assessment is supported by substantial evidence. Accordingly, the ALJ was not required to present a hypothetical question that included limitations she found unpersuasive.

The law is that an ALJ is required to express a claimant's impairments in terms of work-related functions or mental activities, and a VE's testimony is relevant to the inquiry insofar as the hypothetical questions posed by the ALJ to the VE accurately reflect the claimant's functional work capacity. *Arocho v. Sec'y of Health and Human Services*, 670 F.2d at 375. Put differently, a VE's testimony must be predicated on a supportable RFC assessment. *See* 20 C.F.R. § 404.1520(g)(1). In my discussion above, I have already found that the RFC assessment was supported by substantial evidence. I must therefore reject any claim of error at Step Five that raises the issue of a faulty hypothetical question to the VE based on said RFC assessment. *See Bowden v. Colvin*, No. 13-cv-201-GZS, 2014 WL 1664961, at *4 (D. Me. Apr. 25, 2014) ("I have rejected [plaintiff's] arguments about the RFC, so this corollary argument regarding the hypothetical question must fail as well.").

**Issue 4: Step Two Rejection of Fibromyalgia**

The fourth and final issue raised by the Plaintiff is that the ALJ ignored the clinical criteria and failed to consider the cumulative effects of fibromyalgia as part of the RFC assessment. The claim is that, because the ALJ dismissed the diagnosis as not well supported, clinical criteria were ignored and therefore the cumulative effects of

15

fibromyalgia were not considered. (Dkt. No.15 at p. 21) As such, Plaintiff contends that a remand is required to reassess fibromyalgia as a severe impairment and in conjunction with the other impairments she was found to have. (Id.). The Commissioner responds that the alleged diagnosis was not a medically determinable impairment because it was not done in accordance with SSR 12-2P which requires, among other things, overtime assessment of the symptoms and ruling out other disorders or conditions for said symptoms. (Dkt. No. 17 at p. 7).

Plaintiff bears the burden of showing that her fibromyalgia is a medically determinable impairment. *Vazquez-Reinat v. Comm'r of Soc. Sec.*, No. CV 19-1822, 2021 U.S. Dist. LEXIS 142175, 2021 WL 3214392, at *7 (D.P.R. July 29, 2021). "Fibromyalgia is defined as a syndrome of chronic pain of musculoskeletal origin but uncertain cause." *Id.* (quoting *Rodríguez v. Comm'r of Soc. Sec.*, 2021 U.S. Dist. LEXIS 70631, at *9 (D.P.R. Mar. 31, 2021). It is a condition which "'causes severe musculoskeletal pain which is accompanied by stiffness and fatigue due to sleep disturbances' and '[u]nlike other medical conditions, . . . is not amenable to objective diagnosis and standard clinical tests are 'not highly relevant' in diagnosing or assessing fibromyalgia or its severity.'" *Small v. Astrue*, 840 F. Supp. 2d 458, 464 (D. Mass. 2012) (quoting *Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 817, 820 (6th Cir. 1988)). The Commissioner has promulgated rules regarding the analysis of fibromyalgia claims. *See* SSR 12-2p, 2012 SSR LEXIS 1, 2012 WL 3104869. The diagnostic criteria for the condition is set forth in the relevant SSR as follows:

> Widespread pain and other symptoms associated with FM, such as fatigue, may result in exertional limitations that prevent a person from doing the full range of unskilled work

> in one or more of the exertional categories . . . . People with FM may also have nonexertional physical or mental limitations because of their pain or other symptoms. Some may have environmental restrictions, which are also nonexertional.

SSR 12-2p at VI(E)(1), 2012 SSR LEXIS 1, 2012 WL 3104869, at *6. Further, SSR 12-2p lays out the general criteria to establish that a claimant has the medically determinable impairment of fibromyalgia:

> We will find that a person has a [medically determinable impairment] of [fibromyalgia] if the physician diagnosed [fibromyalgia] **and** provides the evidence we describe in section II.A. [the 1990 American College of Rheumatology ("ACR") Criteria for the Classification of Fibromyalgia [(the "1990 Criteria")] or section II. B. [the 2010 ACR Preliminary Diagnostic Criteria [(the "2010 Criteria")], **and the physician's diagnosis is not inconsistent with the other evidence in the person's case record.**

SSR 12-2p, 2012 SSR LEXIS 1, 2012 WL 3104869, at *2 (emphasis added).

In this case, the ALJ concluded that while Dr. Pantojas diagnosed Ms. Martínez with fibromyalgia, he did not follow the 1990 Criteria nor the 2010 Criteria. (Tr. 26). While there was evidence of "pain and some trigger points" (Id.), Dr. Pantojas did not document the rest of the requirements and, critically, did not rule out other impairments as the possible causes of the symptoms. I find no error in this assessment because as the Commissioner points out, the record shows that Dr. Pantojas made the diagnosis after an initial visit while at the same time diagnosing Plaintiff with osteoarthritis. (Tr. 1156-57). And other evidence in the medical record such as notes from the primary care physician Dr. Mercado Santiago, and the consulting rheumatologist, Dr. Babilonia, attributed the pain and other symptoms to conditions such as rheumatoid arthritis, osteopenia, and spinal stenosis rather than fibromyalgia. (Tr. 280, 284, 661, and 1258).

Thus, not only did Dr. Pantojas fail to sufficiently document the fibromyalgia diagnosis under the relevant ACR criteria, said diagnosis was inconsistent with other evidence on record as it failed to exclude other possible causes. *James D. P. v. Saul*, No. 18-cv-00250-JHR, 2019 WL 4784601, 2019 U.S. Dist. LEXIS 168044, at *11 (D. Me. Sep. 30, 2019) (affirming ALJ's decision to find that fibromyalgia was not a medically determinable impairment, among other things, because physician "did not discuss whether he had reached a firm diagnosis of fibromyalgia based on the exclusion of other possible causes."); *see also Bergeron v. Colvin*, No. 15-467M, 2016 U.S. Dist. LEXIS 127555, at *39-40 (D.R.I. Aug. 19, 2016) ("Dr. Mourad's treating notes are devoid of any suggestion that he tried to rule out other disorders, or that he ordered any laboratory tests or imaging" before diagnosing claimant with fibromyalgia based on her subjective complaints of pain.). A remand is not warranted on this issue either.

## IV.    CONCLUSION

In view of the above, I find that the ALJ's decision that Plaintiff is not disabled within the meaning of the Social Security Act is supported by substantial evidence. For that reason, the decision of the Commissioner is hereby **AFFIRMED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico this 16th day of March 2026.

<u>S/Héctor L. Ramos-Vega</u>
HÉCTOR L. RAMOS-VEGA
UNITED STATES MAGISTRATE JUDGE